## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICAN | : | |
| | : | No. 22-cr-0460-JMY |
| vs. | : | |
| | : | |
| BRIAHEEM GRAY | : | |

## MEMORANDUM

**Younge, J.**                                                                                       April 28, 2025

Currently before the Court is a Motion to Suppress Physical Evidence (ECF No. 48) filed by Defendant, Briaheem Gray.  The Court finds issues raised in Defendant's Motion appropriate for resolution without oral argument or an evidentiary hearing.[1]  For reasons set forth hereinbelow, the Court will deny the Defendant's Motion.

## I.        FACTUAL BACKGROUND & PROCEDURAL HISTORY:

The Government alleges that on October 19, 2022, an individual (hereinafter referred to as "the Witness") was arrested by agents for the Federal Bureau of Investigation (FBI) and Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in the Philadelphia area, and charged with selling firearms and methamphetamine to a confidential informant during controlled purchase operations under the supervision of law enforcement.  (Government's Response to Defendant's Motion to Suppress, pages 2-4, ECF No. 49.)  The Government further asserts that the Witness agreed to cooperate with the Government and informed agents that he had obtained the subject firearms and methamphetamine from an acquaintance he knew as "Trap" with the first name "Braheem".  (*Id.*)  The Government alleges that the Witness told

---

[1] Both Attorneys for the United States Government who are assigned this matter represented in emails to the Court that they did not intend to call witnesses or introduce evidence beyond those exhibits attached to their brief in opposition to Defendant's suppression motion.  (See Order, ECF No. 54.) Defense Counsel made no request for an evidentiary hearing and has not objected to the United States Government's contention that no evidentiary hearing is required to resolve the suppression motion.  (*Id.*)

agents that "Trap" had delivered the contraband to the Witness on the dates of the controlled purchase operations. (*Id.*) Law enforcement officers who conducted surveillance during the controlled purchases by the confidential informant, allegedly observed a vehicle that they believe was driven by the Defendant arrive on the scene to meet with the Witness on both of those occasions. (*Id.*)

FBI agents identified "Trap" as Defendant (Briaheem Gray) and, through surveillance efforts, located the house where they believed he was staying in Upper Darby – 6746 Montgomery Avenue, Upper Darby, Pennsylvania. (*Id.*) On November 15, 2022, a federal search warrant was issued in the Eastern District of Pennsylvania by United States Magistrate Judge David R. Strawbridge which authorized agents to search 6746 Montgomery Avenue for evidence of firearms and drug trafficking related offenses. (*Id.*) It is further alleged that the residence belonged to Naimah Butler. (*Id.*)

On November 16, 2022, at approximately 6:00 a.m., FBI agents executed the search warrant for 6746 Montgomery Avenue. (*Id.*) Defendant was present inside and was detained in the front upstairs bedroom, where he had allegedly been sleeping in bed with Ms. Bulter. (*Id.*) On the nightstand directly next to where Defendant was sleeping, agents allegedly recovered a loaded semi-automatic pistol and a quantity of marijuana. (*Id.*) Inside the top drawer of that same nightstand agents allegedly recovered two Pennsylvania state identification cards bearing Defendant's name, "Briaheem S. Gray," as well as a bank card bearing his name, "Briaheem Gray," and an envelope addressed to "Briaheem Gray" at the residence – 6746 Montgomery Avenue. (*Id.*) A search of Defendant's person allegedly resulted in the seizure of crack cocaine contained in three small plastic bags as well as approximately $2,285 in U.S. currency in the pockets of the pants he was wearing. (*Id.*) The Government further alleges that a search of the

same bedroom revealed a bulletproof vest stored between the mattress and the boxspring, as well as a backpack in the closet containing approximately 37 knotted baggies of crack cocaine, three digital scales, a razor blade, and over 80 empty capsules commonly used to package individual quantities of controlled substances.  (*Id.*)  Moreover, on the bed in the bedroom where the couple had allegedly been sleeping, was a second loaded semiautomatic pistol that was lawfully registered to Ms. Butler.  Additional firearms and firearm parts were purportedly recovered from the basement.  (*Id.*)

Defendant has five prior felony drug trafficking convictions in Philadelphia.  As a result, he was not permitted to possess a firearm under federal law.  (*Id.* page 4; Affidavit ¶ 16, ECF No. 50.)  Defendant was indicted by the grand jury on December 14, 2022, and charged with possession with intent to distribute 28 grams or more of a mixture and substance containing a detectable amount of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Count One); possession of a firearm by a felon, in violation 18 U.S.C. § 922(g)(1) (Count Two); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).  (Indictment, ECF No. 8.)  The matter is currently scheduled for trial, and Defendant has filed a motion to suppress evidence that is currently before the Court:

**A.      Defendant's Motion to Suppress Physical Evidence and the Arguments Raised Therein:**

In his Motion to Suppress Physical Evidence, Defendant raises three basic arguments in support of his contention that evidence seized at 6746 Montgomery Avenue should be suppressed.  First, he argues that the Government offered no evidence in support of the Search and Seizure Warrant to establish that he used the Montgomery Avenue address for any criminal activity.  Next, he argues that any evidence offered in support of the Search and Seizure Warrant was stale.  Finally, he argues that the Search and Seizure Warrant was so lacking in probable

cause that the good faith exception to the exclusionary rule does not excuse the executing law enforcement agents' actions in seizing evidence located inside the Montgomery Avenue address.

**B.**    **The Search and Seizure Warrant & Affidavit in Support of Probable Cause:**

The following facts are summarized from the Search and Seizure Warrant and the Affidavit submitted by Philadelphia Police Officer Gregory Stevens (hereinafter "Officer Stevens") in support of the Application for a Search Warrant.  (Search and Seizure Warrant, ECF No. 50 page 8; Affidavit, ECF No. 50 page 13-25.)  Officer Stevens was the affiant for the search warrant for 6746 Montgomery Avenue.  (Affidavit ¶ 1, ECF No. 50.)  At the time, Officer Stevens was assigned to an FBI joint task – the Violent Crime and Drug Task Force.  (*Id.*)  Officer Stevens had been a law enforcement officer since 1994, mostly working as a drug trafficking investigator.  (*Id.* ¶¶ 1-2.)

In June 2021, the FBI and ATF jointly conducted an investigation targeting the Witness.  (Affidavit ¶¶ 8-13.)  In October 2022, the Witness sold firearms and/or methamphetamine to a confidential informant during two controlled purchase operations under the direction of law enforcement.  (*Id.*)  During the first controlled purchase on October 13, 2022, the informant purchased two firearms from the Witness after the Witness retrieved the firearms from a person driving a Dodge Charger ("Vehicle 1").  (*Id.*)  During the second controlled purchase on October 18, 2022, the informant purchased a firearm and methamphetamine from the Witness after the Witness retrieved the contraband from a person driving Vehicle 1.  (*Id.*)

On October 19, 2022, the Witness was arrested by law enforcement.  (*Id.* ¶¶ 14-16, 21.)  The Witness cooperated with the Government and, in the presence of his attorney, the Witness proffered with the government.  (*Id.*)  During the proffer meetings, the Witness informed law enforcement that the driver of Vehicle 1 was a man he knew as "Trap," described as a black man in his early 40s with the first name "Briaheem[,]" who lived in a house in Upper Darby that the Witness had previously

visited.  (*Id.*)  The Witness provided agents with "Trap's" two cellphone numbers.  (*Id.*)  On October 28, 2022, Officer Stevens showed a photograph of Defendant Gray (depicted as a black man, 41 years of age) to the Witness, and the Witness confirmed that Defendant was "Trap," the man who provided him with the guns and methamphetamine during the controlled purchase operations.  (*Id.*)  Officer Stevens ran a criminal history check on Defendant, revealing that he was wanted for a shooting incident involving Ms. Butler that allegedly occurred on November 1, 2021, at 6746 Montgomery Avenue.  (*Id.*)

Officer Stevens also conducted a records check of the license plate on Vehicle 1 and determined it was a rental vehicle registered to Defendant's mother during the period encompassing the controlled purchase operations described above.  (*Id.* ¶¶ 17-20.)  Video surveillance footage from the car rental agency depicted Defendant and his mother returning Vehicle 1 on October 19, 2022.  (*Id.*)  Rental records established that on that same day Defendant's mother rented another vehicle, a Dodge Ram ("Vehicle 2").  (*Id.*)  Officer Stevens stated his belief that it is common for drug traffickers to rent vehicles and do so in other people's names to thwart law enforcement's efforts to conduct surveillance and identify them.  (*Id.*)  Officer Stevens applied that same rationale, based on his experience, explaining why drug traffickers routinely change their phone numbers, which Defendant did following the arrest of the Witness – to thwart law enforcement surveillance efforts. (*Id.*)

On November 1, 2022, Officer Stevens averred that law enforcement surveillance established Vehicle 2 was parked behind 6746 Montgomery Avenue.  (*Id.* ¶¶ 22-25.)  On November 9, 2022, while conducting surveillance at 6746 Montgomery Avenue, Officer Stevens observed a Chevrolet Camaro parked out front ("Vehicle 3").  (*Id.*)  Records checks on Vehicle 3 revealed that it, too, was a rental vehicle registered in Defendant's mother's name, and was swapped out for Vehicle 2 on November 6, 2022.  (*Id.*)  On November 11, 2022, Officer Stevens observed Defendant arrive at 6746 Montgomery Avenue while driving Vehicle 3.  (*Id.*)  According to Officer Stevens, when

Defendant exited Vehicle 3 on November 11, Defendant reached into his vehicle and then moved his hands toward his waist area, a movement that Officer Stevens believed was consistent with secreting a firearm. (*Id.*) Upon making these observations, TFO Stevens watched Defendant enter 6746 Montgomery Avenue. (*Id.*)

Officer Stevens then swore and attested to his conclusion that:

Based on the foregoing, I believe that [Defendant] is currently staying at [6746 Montgomery Avenue]. As of this writing, I know that [Defendant] is wanted by law enforcement in connection with the shooting incident at [6746 Montgomery Avenue] on November 1, 2021, and for not reporting to Philadelphia County Probation after the Delaware County warrant was issued on November 1, 2021.

Affidavit ¶ 26.

Officer Stevens went on to opine:

Based on my training and experience and my knowledge gained from conducting firearms trafficking investigations, I know that it is common for firearms traffickers who deal firearms to keep gun boxes, firearms sales receipts, and notes detailing sales-related information. Typically, as appears to be the case in this investigation, only the firearms are sold. The gun boxes, firearms sales receipts, business cards, and other items are left behind in traffickers' residences and vehicles. I believe it is likely that [Defendant] has obtained these firearms and other firearms from a straw purchaser, or someone who purported to buy a firearm for himself but then illegally transferred it to a person not authorized to possess a firearm (like Defendant). The investigation has revealed that Defendant sold three firearms to [the Witness] within approximately the last month, and that he possessed a firearm when he discharged it on November 1, 2021 at the [6746 Montgomery Avenue] (resulting in a warrant for his arrest). Further, based upon my surveillance of [Defendant] on November 11, 2022 at [6746 Montgomery Avenue], I observed him move his hands near his waistband when he exited VEHICLE 3. I believe, based upon my training and experience as a law enforcement officer, that [Defendant's] movements at that time were consistent with him concealing a firearm in his midsection.

Based on above facts, and coupled with my training and experience, I submit that there is probable cause to believe that there is and will be, evidence of violations 18 U.S.C. § 922(g)(1) (possession of a firearm by a felon), 18 U.S.C. § 933 (trafficking in firearms); 18 U.S.C. § 924(a)(1)(A) (straw purchasing); 21 U.S.C. § 841(a)(1) (distribution of controlled substances), and 18 U.S.C. § 2 (aiding and abetting these crimes) inside of [6746 Montgomery Avenue] described in further detail in Attachment A, and that the items outlined on Attachment B will be found therein. This application seeks authority to enter [6746 Montgomery Avenue] and

to search for and seize fruits, evidence, and/or instrumentalities of the Subject Offenses. Accordingly, I respectfully request that the Court issue a search warrant for [6746 Montgomery Avenue].

*Id.* ¶¶ 27-28.

On November 15, 2022, the Honorable David R. Strawbridge, now-retired U.S. Magistrate Judge, reviewed Officer Stevens' Affidavit and determined there was probable cause to conduct a search of 6746 Montgomery Avenue and seize evidence related to the crimes under investigation. The Warrant was issued on November 15, 2022, and executed the next day.

## II.    LEGAL STANDARD:

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. For a search to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause. *See United States v. Burton*, 288 F.3d 91, 102 (3d Cir. 2002) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980)). An issuing judge or magistrate may find probable cause when "viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The judge "is to make a practical, commonsense decision," *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000), and "is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *U.S. v. Hodge*, 246 F.3d at 305-06. "The issuing judge may also give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." *Whitner*, 219 F.3d at 296.

Direct evidence linking the crime to the location to be searched is not required to support a search warrant. *Id.* at 297. Instead, the issuing judge can infer probable cause by "considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment, and

normal inferences about where a criminal might hide contraband or stolen property." *Id.* (quoting *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993)).  In evaluating the issuing magistrate's probable cause determination, the Court conducts a deferential review, *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (citing *Gates*, 462 U.S. at 238-39), and considers only the facts that were before the issuing authority, i.e., facts contained in the affidavit of probable cause.  *U.S. v. Jones*, 994 F.2d at 1055.  Importantly, the Court does not decide probable cause *de novo*, but rather determines whether the affidavit provides a "substantial basis" to support the conclusion that probable cause existed.  *U.S. v. Stearn*, 597 F.3d at 554; *see also Gates*, 462 U.S. at 238.  If a substantial basis exists to support the probable cause finding, the Court must uphold that finding even if it or a "different magistrate judge might have found the affidavit insufficient to support a warrant."  *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993).  Although the district court should not simply "rubber stamp" the issuing judge's conclusions, *Whitner*, 219 F.3d at 296 (citing *U.S. v. Jones*, 994 F.2d at 1055), the Supreme Court has directed that "doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."  *U.S. v. Stearn*, 597 F.3d at 554 (citing *U.S. v. Gates*, 462 U.S. at 237 n. 10).  The defendant bears the burden of establishing that his Fourth Amendment rights were violated.  *United States v. Acosta*, 965 F.2d 1248, 1257 n. 9 (3d Cir. 1992).

## III.    DISCUSSION:

The Court rejects the arguments made by Defendant in his Motions to Suppress Physical Evidence.  The Court is not prepared to set aside the Search and Seizure Warrant issued by Judge Strawbridge based on Defendant's argument that it was lacking in probable cause.  For reasons explained in more detail in each of the subsections hereinbelow, Judge Strawbridge drew a

reasonable inference that evidence connected with Defendant's suspected criminal activity in the two controlled purchases would be found at 6746 Montgomery Avenue.

**A.    Officer Steven's Affidavit Set Forth Evidence to Support the Conclusion that Defendant Lived at 6746 Montgomery Avenue and that Evidence of Defendant's Suspected Drug and Firearms Trafficking Would be Stored Inside:**

The Court is not prepared to set aside Judge Strawbridge's finding of probable cause based on arguments made by Defendant in his Motion to Suppress Physical Evidence.  In his suppression motion, Defendant argues that the Search and Seizure Warrant is deficient because Officer Steven's Affidavit failed to establish probable cause.  Defendant argues that there is no connection between his purported involvement in the two controlled purchases made by the confidential informant and the Montgomery Avenue address.  Therefore, he argues that the Search and Seizure Warrant and Affidavit contained no evidence to establish that he used the Montgomery Avenue address for any criminal activity.  For example, he was not observed leaving or entering the residence immediately prior to or after either of the controlled purchases. Defendant asserts that the Warrant and accompanying Affidavit establish, at best, that he was the occasional overnight visitor of Naimeh Butler.

In the Third Circuit, there is a sufficient basis to infer that evidence of drug dealing might be found in a residence when the affidavit is based on evidence that (1) "the person suspected of drug dealing is actually a drug dealer;" (2) "the place to be searched is possessed by, or the domicile of, the dealer;" and (3) "the home contains contraband linking it to the dealer's activities." *United States v. Thornton*, 559 F. App'x 176, 179 (3d Cir. 2014) (citing *U.S. v. Stearn*, 597 F.3d at 559.  In *United States v. Williams*, a drug trafficking case involving a search warrant at a defendant's home, the Third Circuit noted: "We have long maintained that when a suspect is involved in drug trafficking, on a significant scale or for an extended period of time, it

is reasonable to infer that he would store evidence of that illicit activity in his home. 974 F.3d 320, 351 (3d Cir. 2020) (citing *U.S. v. Hodge*, 246 F.3d at 306; *U.S. v. Whitner*, 219 F.3d at 297-98. "It is insufficient, however, if the affidavit suggests only that the suspect "'is actually a drug dealer'" and "'that the place to be searched is possessed by, or the domicile of, the [suspect].'" *Id.* (quoting *U.S. v. Burton*, 288 F.3d at 104. "There must also be evidence "'linking [the targeted location] to the [suspect]'s drug activities.'" *Id.* When some of the information is sourced from a confidential informant, the Court in *Williams* held that "independent police work" must substantially corroborate the informant's information; indeed, the Court held that such corroboration "may provide the requisite substantial basis for a magistrate's finding of probable cause, to which we will defer." *Id.*

Based on the Court's application of the above cited case law and the facts of this case the Court rejects the arguments made by Defendant in his suppression motion. The Affidavit submitted by Officer Stevens sets forth adequate factual evidence to suggest that Defendant was a drug and firearms dealer. Defendant's criminal record coupled with his involvement in two controlled buys with the confidential informant suggests he was a drug dealer and not merely a drug user.

Officer Stevens Affidavit also set forth adequate facts to suggest that Defendant was staying with Ms. Butler at 6746 Montgomery Avenue. For example, the cooperating witness told officers that Defendant lived in a house in Upper Darby, Pennsylvania where he once met Defendant. Law enforcement agents also performed a records check, which revealed that the Montgomery Avenue address was one of the potential places that Defendant frequented and resided. More importantly, an arrest warrant was issued for Defendant after he was involved in a domestic dispute with Ms. Butler in which Defendant allegedly discharged a firearm during the

incident.  This domestic incident allegedly occurred just over a year prior to when Judge Strawbridge issued the Search Warrant, and there was evidence to suggest that Defendant had reconciled his differences with Ms. Butler.  For example, rental cars that Defendant was suspected of using were seen parked near the residence, and Defendant was observed entering the location.

An evaluation of the totality of the circumstances establishes that Judge Strawbridge's decision to issue a Search and Seizure Warrant for 6746 Montgomery Avenue was based on his reasonable inference that evidence of Defendant's suspected criminal activity would be located at the residence.  Therefore, the Court will not set aside Judge Strawbridge's decision to issue the Warrant for the Montgomery Avenue address based on the argument that Judge Strawbridge's decision was lacking in probable cause.  The Court rejects Defendant's argument that there was no factual evidence to suggest a nexus between the criminal conduct he is suspected of committing and the Montgomery Avenue address.

The argument made by Defendant ignores key evidence in support of Judge Strawbridge's decision to issue the Search and Seizure Warrant.  For example, Officer Stevens swore and attested to the fact that he saw Defendant – a convicted felon – enter the Montgomery Avenue location with what Officer Stevens believed was a handgun secreted in the waistband of his pants.  The Court is cognizant of the fact that Defendant switched rental cars under suspicious circumstances immediately after the arrest of the cooperating Witness.  Therefore, the rental car used in connection with the control purchases was not identified during surveillance of 6746 Montgomery Avenue.  However, rental cars that Defendant was suspected of using were parked at or near the residence.

Critical to any analysis of probable cause and Judge Strawbridge's decision to issue the Search and Seizure Warrant was Officer Stevens' opinion that "it is common for firearms traffickers who deal firearms to keep gun boxes, firearms sales receipts, and notes detailing sales-related information" in their homes and vehicles. (Affidavit ¶ 27.) By analogy to cases involving drug dealers, which Defendant is also suspected of being, a number of courts of appeals in other jurisdictions have held that evidence of involvement in the drug trade is likely to be found where the dealers reside. *See United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999) (It reasonably could be supposed that a drug dealer stored evidence of dealing at his home, though no drug trafficking was observed to occur there.); *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir.) ("In issuing a search warrant, a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept . . . and . . . in the case of drug dealers, evidence is likely to be found where the dealers live.") (*quoting United States v. Reddick*, 90 F.3d 1276, 1281 (7th Cir. 1996); *United States v. Luloff*, 15 F.3d 763, 768 (8th Cir. 1993) (observations of drug trafficking occurring away from dealer's residence along with officer's statement in affidavit that drug dealers often store evidence in their residences provided probable cause for search of dealer's house); *United States v. Thomas*, 989 F.2d 1252, 1255 (D.C. Cir. 1993) (observations of drug trafficking occurring away from dealer's residence can provide probable cause for search of dealer's house); *United States v. Williams*, 974 F.2d 480, 482 (4th Cir. 1992) (affidavit establishing that known drug dealer was residing in a motel room established sufficient probable cause to search motel room for drug paraphernalia); *United States v. Davidson*, 936 F.2d 856, 859-60 (6th Cir. 1991) (evidence of pattern of defendant's involvement in drug-dealing established probable cause to search defendant's residence although there was no direct evidence of drug dealing occurring at the residence); *United States v. Angulo-*

*Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) ("In the case of drug dealers, evidence is likely to be found where the dealers live."); *United States v. Cruz*, 785 F.2d 399, 406 (2d Cir. 1986) (probable cause established for search of drug dealer's apartment although defendant was not seen using the apartment).

Based on a totality of the circumstances, Judge Strawbridge's finding of probable cause is supported by sufficient evidence to establish a nexus between the Defendant, his suspected drug/firearms trafficking activities, and the Montgomery Avenue address.

**B.    The Search and Seizure Warrant Was Timely Obtained and the Information Therein Was Not Stale:**

There is no merit to Defendant's argument that the evidence relied upon by Judge Strawbridge in making his probable cause determination was stale.  Defendant's assertion that the Warrant relies on stale evidence is identical to the argument he advances when challenging the nexus between his suspected criminal activity in the two controlled purchases and 6746 Montgomery Avenue.  However, the argument asserted by Defendant fails because the evidence relied upon by Judge Strawbridge was not stale.

Generally, when information supporting a warrant application is too old, the information is stale and cannot establish probable cause. *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993).  However, age alone does not determine whether information is stale.  *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2010); *United States v. Vosburgh*, 602 F.3d 512, 529 (3d Cir. 2010); *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir.1983).  Instead, the reviewing court must examine, on a case-by-case basis, the: (1) nature of the crime; and (2) the type of evidence sought by the warrant.  *Zimmerman*, 277 F.3d at 426; *United States v. Towne*, 705 F. Supp. 2d 125, 132 (D. Mass. 2010) ("The likelihood that evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock.").

In the case *sub judice*, the Warrant was signed on November 15, 2022.  The last controlled purchase in which the Defendant was allegedly involved occurred October 18, 2022.  Defendant was identified in a photograph by the Witness on October 28, 2022.  Defendant was observed driving his third rental car at the House within that one-month period on November 11, 2022, and the Warrant was signed within four days of Officer Stevens' observation of Defendant entering the Montgomery Avenue address in possession of what appeared to be a firearm.  The information in support of the probable cause determination based upon the timing of the investigative steps taken in the investigation is not stale.  *See, e.g.*, *United States v. Stiver,* 9 F.3d 298, 301 (3d Cir. 1993) (holding that three-day old information concerning the presence of drugs at a residence considered "very fresh" in the context of an ongoing pattern of drug dealing).

**C.    The Search Warrant Was Signed by a Valid Magistrate and Law Enforcement Agents Were Entitled to Rely Upon the Warrant in Good Faith:**

The Court finds no merit in Defendant's argument that law enforcement agents were not entitled to the good faith exception to the exclusionary rule.  Typically, in search warrant cases, the Court must determine "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate [judge's] authorization."  *Hodge*, 246 F.3d at 307 (quoting *United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999) (quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984)).  This "good faith exception" to the exclusionary rule can be applied where agents rely in good faith on a neutral magistrate's judgment that probable cause justified the issuance of a search warrant, excluding evidence acquired pursuant to the warrant does not further the deterrent function of the exclusionary rule.  *Id.*, 468 U.S. at 920-21.  However, the Court also made it clear that there were several situations in which police reliance on a warrant is not objectively reasonable.  *Id.,* 468 U.S. at 923.  These situations were described as (1) when the magistrate abandoned his judicial role and failed to perform in a neutral and

detached manner, (2) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief it its existence entirely unreasonable," (3) when the warrant was so facially deficient that an officer could not reasonably have believed it to be valid, and (4) when the magistrate issued the warrant in reliance on deliberately or recklessly false material averments in the affidavit. *Id.*

In this instance, Defendant has failed to come forward with a valid argument to suggest that the good faith exception is inapplicable to the search of 6746 Montgomery Avenue. There is nothing to suggested that Judge Strawbridge was anything but a neutral and/or detached magistrate. There is also nothing to suggest that Judge Strawbridge relied on false evidence in reaching his probable cause determination. Furthermore, the Search and Seizure Warrant explicitly identifies the location to be searched and that the evidence of drug and firearms trafficking crimes was to be seized. As previously discussed hereinabove, the Affidavit submitted by Officer Stevens set forth sufficient and reasonable factual evidence to support Judge Strawbridge's probable cause determination. Therefore, law enforcement agents were entitled to rely in good faith upon the Warrant's authority in conducting their search, and the good faith exception is applicable to the evidence seized in the raid.

## IV.    CONCLUSION:

Defendant's Motion to Suppress Physical Evidence is denied for the reasons set forth hereinabove. An appropriate Order will be entered by the Court along with this Memorandum.

BY THE COURT:

  /s/ John Milton Younge
Judge John Milton Younge

15